UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| United States of America, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:13-cv-00884-JAR |
| | ) |
| Joseph L. Burns, et al., | ) |
| | ) |
|     Defendants. | ) |

**FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION
AND OTHER RELIEF**

The United States hereby submits its FIRST AMENDED COMPLAINT against Joseph L. Burns, doing business as Electronic Tax Service, Joseph Thomas, and International Tax Service, Inc. (collectively referred to herein as "Defendants"), and alleges as follows:

**Authorization**

1. The United States brings this action under sections 7402, 7407, and 7408 of the Internal Revenue Code (I.R.C.) (26 U.S.C.) ("the Code") seeking an injunction order permanently barring Defendants, individually and doing business as or through any entity, and anyone in active concert or participation with them, from:

   a. acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

   b. preparing or assisting in the preparation of federal tax returns that they know, or reasonably should know, will result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by I.R.C. § 6694;

   c. engaging in any activity subject to penalty under I.R.C. § 6695(g), which penalizes preparers who claim the Earned Income Tax Credit (EITC) for their customers without first complying with the due diligence requirements imposed by Treasury regulations;

      d. owning, operating, managing, working in, controlling, licensing, or franchising a tax return preparation business;

      e. engaging in conduct subject to penalty under I.R.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

      f. engaging in any conduct that substantially interferes with the proper administration and enforcement of the Internal Revenue laws.

2. This action has been requested by the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General pursuant to I.R.C. §§ 7402, 7407, and 7408.

## Jurisdiction and Venue

3. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1340 and 1345 and I.R.C. § 7402.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and because all or a substantial portion of the events giving rise to this suit occurred in, and currently take place in, this district.

## Defendants

5. Defendant Joseph Burns resides in St. Charles, Missouri, within this judicial district.

6. Burns has a B.A. in Management Science from St. Louis University. Burns worked full-time for the Metropolitan Sewer District for 42 years before retiring in February 2011.

7. Burns has been a federal tax return preparer since 1989, starting as an employee of a tax return preparation franchise office. In 1995, Burns opened his own tax return preparation business called Electronic Tax Service (a sole proprietorship) in St. Louis.

8. Defendant Joseph Thomas lives in St. Louis, Missouri, within this judicial district.

9. Thomas has been a federal tax return preparer for at least 15 years. From 2005 until late 2011, Thomas worked as a tax return preparer for Burns at Electronic Tax Service. Burns

generally charged customers $150 per return and paid Thomas $100 for each return he prepared.

10. In early 2012, Thomas left Burns/Electronic Tax Service and opened his own tax preparation business called International Tax Service, Inc., a Missouri corporation.

11. Both Burns and Thomas operate their tax preparation businesses from an office building located at 4144 Lindell Boulevard in the Midtown neighborhood of St. Louis.

12. Burns prepares approximately 350 federal tax returns per year. Thomas prepares approximately 1,100 federal tax returns per year. Burns and Thomas charge customers approximately $150 to prepare each return.

## Defendants' Fraudulent Return Preparation Activities

13. Defendants continually and repeatedly prepare fraudulent federal income tax returns containing false, fabricated, and/or bogus information not reported to Defendants by their customers.

14. Defendants continually and repeatedly prepare returns with bogus Schedules C (profit or loss from business) that contain fraudulent and/or fabricated income and expenses.

15. Defendants use this bogus information to lower their customers' taxable income and/or to allow their customers to claim the earned income tax credit ("EITC").

16. The EITC is a refundable tax credit available to certain low-income individuals. The amount of the credit is based on the taxpayer's income, filing status, and claimed number of dependents. The requirements for claiming the EITC are located in 26 U.S.C. § 32.

17. Because the EITC is a refundable credit, claiming the EITC can reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a refund from the U.S. Treasury.

3

18. Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents. Moreover, individuals with higher annual incomes, up to a certain level, are entitled to a larger credit.

19. Unscrupulous tax return preparers like Defendants exploit the EITC by claiming on their customers' returns bogus dependents and/or by minting income from phony businesses.

20. Because of the potential for abuse in claiming the EITC, Congress authorized the Secretary of the Treasury to impose "due diligence" requirements on federal income tax return preparers claiming the EITC for their customers. These "due diligence" requirements obligate the tax return preparer to make "reasonable inquiries" to ensure the customer is legitimately entitled to the EITC. The tax return preparer may not "ignore the implications of information furnished to, or known by, the tax return preparer, and must make reasonable inquiries if the information furnished to the tax return preparer appears to be incorrect, inconsistent, or incomplete." *See* 26 C.F.R. § 1.6695-2 (2010). Tax return preparers must also document their compliance with these requirements and keep that documentation for three years. *Id*.

21. The due diligence requirements are intended to ensure that tax preparers take measures to verify a customer's eligibility for the EITC. This includes, at a minimum, verifying head of household status and obtaining documentation regarding dependency status.

22. Not only do Defendants fail to adhere to the due diligence requirements described above, but they take affirmative and deliberate steps to falsify information on their customers' returns in order to obtain and/or to maximize the EITC for their customers.

4

23. Defendants' actions show an intentional disregard for the due diligence requirements under I.R.C. § 6695(g) and demonstrate their unwillingness to ever comply with these requirements.

24. Defendants also continually and repeatedly fabricate and/or wildly inflate itemized deductions on customers' returns for items like charitable contributions (cash and non-cash) and unreimbursed employee business expenses. Defendants also improperly deduct as business expenses non-deductible items like "grooming" and "professional attire."

25. Defendants also continually and repeatedly prepare returns reporting false filing statuses in order to increase the standard deduction claimed on customers' returns and/or to garner eligibility for the EITC. Specifically, Defendants improperly claim head-of-household filing status for customers despite knowing that customers are married and/or not eligible to claim head-of-household.

26. Defendants engage in the fraudulent and deceptive conduct described herein to illegally lower their customers' federal tax liabilities and/or to generate larger tax refunds. Defendants hope their "results" will lead to customer referrals and more business.

### Examples of Joseph Burns Preparing Fraudulent Returns

*Fabricating Deductions for Charitable Contributions,*
*Unreimbursed Employee Business Expenses and Other Expenses*

27. Joseph Burns prepared Tanya Prophete's 2009 federal income tax return and fabricated more than $13,000 in unreimbursed employee business expenses and more than $5,000 in bogus cash charitable contributions that Prophete did not incur or report to Burns. Burns also fabricated deductions for insurance and management fees to illegally offset Prophete's taxable income from a rental property. Prophet did not have insurance on the

rental property or pay management fees in 2009. After the IRS disallowed these bogus deductions, Prophete owed over $4,500 in additional tax, penalties, and interest.

28. On Daryle Jones's 2011 federal income tax return, Burns fabricated $91,800 in unreimbursed business vehicle expenses. Although Jones worked as truck driver in 2011, he earned only $33,833 in wages and his employer paid for all vehicle expenses. Jones did not tell Burns that he incurred out of pocket expenses related to his job as a truck driver nor was Jones aware that Burns reported these expenses on his return. The fabricated expenses improperly resulted in Jones paying no federal income tax for 2011.

29. Burns prepared Rhlonda James's 2011 federal income tax return. Burns fabricated itemized deductions of $2,100 for professional attire, $536 for cleaning/maintenance, $895 for grooming, $2,940 for cell phone, and $4,200 for gasoline. James provided Burns with an estimate of her monthly cell phone bill, but did not provide Burns with any information regarding the other expenses reported on her return.

30. On the 2011 joint federal income tax return of Casey and Brooke Scruton, Burns fabricated Schedule A itemized deductions of over $13,000 for medical expenses, over $4,000 for charitable contributions, approximately $7,000 for business expenses, $550 for grooming, $5,700 for gasoline, almost $6,000 for cell phone, and approximately $2,000 for condo fees. In addition, Burns falsified over $5,000 in vehicle expenses (in addition to the gasoline) and $3,200 for meals and entertainment. The Scrutons did not provide this information to Burns.

*Fabricated Schedule C Income and Expenses*

31. Shareka Cotton told Burns that she earned approximately $1,500 cutting hair in 2011, yet Burns prepared Cotton's 2011 federal income tax return falsely reporting $12,500 in

gross receipts on a Schedule C. Similarly, on Janice Redmond's 2011 tax return, Burns falsified $16,900 in Schedule C gross receipts purportedly from a "beautician" business. Redmond styled hair for others during 2011, but told Burns that she earned only $100 a month or $1,200 for the entire year. These bogus gross receipts enabled Burns to claim the maximum earned income tax credit for Cotton and Redmond on their 2011 returns, thereby generating large and unwarranted tax refunds for Cotton and Redmond.

*Married Taxpayers Improperly Filing as Head-of-Household*

32. David Thornton and Rebecca Quinn were married and living together during 2011. When Thornton went to Burns in 2012 to have his 2011 return prepared, Burns told Thornton, who is on disability, that Thornton should not file a return since his 2011 income was under the threshold for filing a tax return individually. Burns then prepared a return for Thornton's wife, improperly reporting only Quinn's income and falsely claiming the head-of-household filing status despite Burns knowing that Quinn was married to Thornton. Burns should have filed Quinn's return with the filing status "married, filing separately," and excluded Thornton's income, or "married, filing jointly," and included Thornton's income. Claiming the head-of-household filing status improperly enabled Quinn to claim an EITC of $3,094 while avoiding paying tax on Thornton's income.

**Examples of Joseph Thomas Preparing Fraudulent Returns**

*Fabricating Deductions for Child Care Expenses, Charitable Contributions and Unreimbursed Employee Business Expenses*

33. Joseph Thomas prepared a 2011 return for Paulette McCoy falsely claiming $3,550 of daycare expenses McCoy did not incur. McCoy's son, who was listed on her return, did not attend daycare nor did McCoy tell Thomas that she incurred daycare expenses.

7

34. Thomas also fabricated over $2,500 in charitable contributions and almost $10,000 in miscellaneous unreimbursed employee business expenses on McCoy's 2011 return. McCoy did not discuss charitable giving with Thomas and did not provide Thomas with any amounts for the unreimbursed employee business expenses reported on her return.

35. On Thomas and Andrea Sparks's 2010 and 2011 joint federal income tax returns, Joseph Thomas falsified an average of $20,000 in bogus deductions each year for items like: charitable contributions, vehicle expenses, gasoline, meals & entertainment, professional attire, grooming, cell phone, and cleaning and maintenance expenses. The Sparkses did not provide any of this information to Thomas.

36. On Casey and Brooke Scrutons's 2010 joint federal income tax return (Burns prepared their 2011 return), Thomas reported the following bogus deductions: medical expenses of approximately $8,000, charitable contributions of approximately $4,000, and miscellaneous deductions for uniforms/shoes, cleaning, cell phone, vehicle expenses, gasoline, and meals, all totaling more than $13,000. Thomas also fabricated child daycare expenses of $3,400. The Scrutons did not send their daughter to the daycare listed on their return and did not provide any of this information to Thomas.

37. On Leondre Franks's 2010 federal income tax return, Thomas falsified deductions of more than $5,000 for medical expenses and over $5,000 for charitable contributions. Thomas also reported bogus itemized deductions for unreimbursed employee business expenses exceeding $10,000, including $3,135 for vehicle expenses, $4,690 for gasoline, $3,176 for meals and entertainment, $1,127 for cell phone, $575 for cleaning and maintenance, and $1,093 for professional attire. Franks did not provide Thomas with any information regarding these expenses and/or charitable contributions.

### Filing False or Failing to File Personal Tax Returns

38. Defendants' disregard of federal tax laws is further illustrated by their own returns.

39. On Burns's 2007 through 2011 federal income tax returns, which Burns prepared, he improperly claimed his daughter as a dependent even though she did not live with him nor was she a full-time student during those years.

40. On his 2011 return, Burns reported only $3,226 in gross receipts from his tax return preparation business. Records show that Burns prepared at least 210 returns in 2011, thus Burns should have had gross receipts of at least $31,500 (210 returns at $150 each).

41. Thomas, on the other hand, was and remains married, yet he prepared and filed his 2009, 2010, and 2011 returns improperly using the head-of-household filing status. Although Thomas lives with his wife, he prepared and filed separate returns for his wife, also improperly claiming head-of-household for her. The bogus filing statuses allowed Thomas and his wife to improperly claim higher standard deductions than they would have under the proper filing status of married, filing jointly, or married, filing separately.

42. In addition, on Thomas's 2006, 2009, 2010, and 2011 federal income tax returns, which he prepared, Thomas failed to report income from his tax return preparation activities. Moreover, Thomas altogether failed to file federal income tax returns for 2004, 2005, 2007, and 2008, despite earning income from the preparation of federal tax returns, which became his sole income source in 2005.

43. Finally, Thomas claimed his niece as a dependent on his 2009, 2010, and 2011 tax returns even though Thomas's niece lived elsewhere and did not qualify as his dependent.

**Harm Caused by Defendants**

44. Defendants' fraudulent return preparation activities have caused (and continue to cause) significant harm to Defendants' customers, the U.S. Treasury, and the public at large.

45. Defendants' customers have been harmed because they pay Defendants to prepare proper tax returns. Instead, Defendants prepare returns that have substantially understated their customers' correct tax liabilities. As a result, many customers may now face large income tax debts and may be liable for sizeable penalties and interest.

46. Defendants' fraudulent practices likewise harm the U.S. Treasury in the form of lost tax revenue. Audits of returns prepared by Defendants for the 2006-2011 tax years have resulted in an average adjustment of $4,124 per return.

47. Assuming Defendants prepare a combined 1,450 returns each year, the loss to the U.S. Treasury as a result of Defendants' fraudulent return preparation activities could be as much as $6,000,000 annually ($4,124 average deficiency multiplied by 1,450 returns).

48. Defendants' conduct also harms honest tax return preparers who refuse to engage in such unscrupulous conduct and who may unfairly lose business to Defendants as a result of Defendants' willingness to break the law.

49. Finally, Defendants' misconduct harms the public at large by undermining public confidence in the federal tax system and encouraging widespread violations of the internal revenue laws.

50. Without an injunction, Defendants are likely to continue preparing false and fraudulent federal income tax returns causing harm to Defendants' customers, the government, and the public at large. An injunction will serve the public interest because it will put a stop to

Defendants' illegal conduct and the harm that such conduct causes Defendants' customers, the U.S. Treasury, and the public.

## Count I – Injunction under 26 U.S.C. § 7407

51. The United States incorporates by reference the allegations in paragraphs 1 through 50.

52. Section 7407 of the Code authorizes a district court to enjoin a tax return preparer from engaging in conduct subject to penalty under I.R.C. §§ 6694 or 6695 and/or from engaging in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws. 26 U.S.C. § 7407(b)(1)(A)-(D).

53. If the Court finds that the preparer has continually and repeatedly engaged in any of the conduct described in paragraph 52 and that an injunction prohibiting such conduct would not be sufficient to prevent that person's interference with the proper administration of internal revenue laws, the court may enjoin that person from acting as a tax return preparer. 26 U.S.C. § 7407.

*Defendants' I.R.C. § 6694 Penalty Conduct*

54. Section 6694 of the Code imposes a penalty against a tax return preparer who prepares a federal tax return or claim of refund understating the taxpayer's liability due to an unreasonable position (one for which there is no substantial authority), and the preparer knew or should have known of the position. 26 U.S.C. § 6694(a).

55. Section 6694 of the Code also imposes a penalty against a tax return preparer who prepares a federal tax return understating the taxpayer's liability due to the preparer's own willful or reckless conduct. 26 U.S.C. § 6694(b).

11

56. Defendants have continually and repeatedly prepared federal income tax returns that understate their customers' tax liabilities based on unreasonable positions they knew or should have known were unreasonable.

57. Defendants have continually and repeatedly engaged in willful or reckless conduct when preparing federal income tax returns that understate their customers' federal tax liabilities.

*Defendants' I.R.C. § 6695 Penalty Conduct*

58. The Treasury regulations promulgated under Section 6695(g) of the Code, prohibit a return preparer from claiming the EITC without first conducting proper due diligence and documenting his or her compliance with the due diligence requirements. See 26 C.F.R. § 1.6995-2 (2010).

59. Defendants' failure to comply with the due diligence requirements for the EITC violates Treasury Regulations and their willingness to falsify information to obtain the EITC for their customers shows a reckless and/or intentional disregard of the IRS rules and regulations.

60. Defendants have continually and repeatedly prepared federal income tax returns that claim EITCs for which Defendants have not conducted, let alone, documented the required due diligence procedures.

61. In addition to the specific conduct that violates I.R.C. §§ 6694 and 6695, Defendants, through the actions described above, have engaged in fraudulent and deceptive conduct that substantially interferes with the administration of internal revenue laws.

62. Injunctive relief under 26 U.S.C. § 7407 is necessary to prevent this misconduct because, absent an injunction, Defendants are likely to continue preparing federal income tax

12

returns for customers that understate their federal tax liabilities and enable them to receive greater refunds than what they are legally entitled.

63. Defendants should be permanently enjoined under 26 U.S.C. § 7407 from acting as tax return preparers because a more limited injunction would be insufficient to stop their repeated interference with the proper administration of the tax laws.

## Count II: Injunction under 26 U.S.C. § 7408

64. The United States incorporates by reference paragraphs 1 through 63 above.

65. Section 7408 of the Code authorizes a district court to enjoin a tax return preparer from engaging in conduct that is subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of that conduct.

66. Section 6701(a) of the Code imposes a penalty against any person who aids or assists in, procures, or advises with respect to the preparation of any portion of a federal income tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used it would result in an understatement of another person's tax liability.

67. Defendants prepare fraudulent federal tax returns on which they intentionally inflate and/or fabricate tax deductions and/or credits knowing (or having reason to know) that those returns will result in their customers' understating their federal tax liabilities.

68. If the Court does not enjoin Defendants, they are likely to continue to engage in penalty conduct under 26 U.S.C. § 6701. Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

13

### Count III – Injunction under 26 U.S.C. § 7402

69. The United States incorporates by reference paragraphs 1 through 68 above.

70. Section 7402 of the Code authorizes district courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws." The remedies available to the United States under this statute "are in addition to and not exclusive of any and all other penalties." 26 U.S.C. § 7402(a).

71. Defendants, through the actions described above, have engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws, and they are likely to continue to engage in such conduct unless enjoined.

72. If Defendants are not enjoined from preparing tax returns for others, the United States will suffer irreparable injury by erroneously providing tax refunds to persons not entitled to receive them and by taxpayers not reporting and paying the correct amount of taxes.

73. Unless Defendants are enjoined from preparing federal tax returns for others, the IRS will have to devote substantial time and resources to identifying and locating their customers, and then examining those customers' tax returns. Pursuing all individual customers may be impossible given the IRS's limited resources.

74. Enjoining Defendants from preparing federal tax returns is in the public interest because an injunction will stop their illegal conduct and the harm it causes the United States and its citizenry.

75. The Court should therefore order injunctive relief under 26 U.S.C. § 7402(a).

WHEREFORE, the United States requests the following relief:

A. That the Court find that Defendants have continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694 and 6695, and have continually and repeatedly

14

       engaged in other fraudulent or deceptive conduct that substantially interferes with the administration of the tax laws, and that a narrower injunction prohibiting only this specific misconduct would be insufficient;

B.     That the Court, pursuant to I.R.C. § 7407, enter a permanent injunction prohibiting Defendants from acting as federal tax return preparers;

C.     That the Court find that Defendants have engaged in conduct subject to penalty under I.R.C. § 6701, and that injunctive relief under I.R.C. § 7408 is appropriate to prevent a recurrence of that conduct;

D.     That the Court finds that Defendants have engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and I.R.C. § 7402(a);

E.     That the Court, under 26 U.S.C. §§ 7407, 7408, and 7402(a), enter an injunction order permanently barring Defendants, and all those in active concert or participation with them, from:

    (1)     acting as federal tax return preparers or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than themselves;

    (2)     preparing or assisting in the preparation of federal tax returns that they know or reasonably should know would result in an understatement of tax liability or the overstatement of federal tax refund(s) as penalized by I.R.C. § 6694

    (3)     engaging in any activity subject to penalty under I.R.C. § 6695(g), which penalizes preparers who claim the Earned Income Tax Credit (EITC) for their customers without first complying with the due diligence requirements imposed by Treasury regulations;

    (4)     owning, operating, managing, working in, controlling, licensing, or franchising a tax return preparation business;

      (5)      engaging in conduct subject to penalty under I.R.C. §§ 6694, 6695, 6701, or any other penalty provision in the Internal Revenue Code; and

      (6)      engaging in any conduct that substantially interferes with the proper administration and enforcement of the Internal Revenue laws.

F.      That the Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter an order requiring Defendants to contact, within fifteen days of the Court's order, by United States mail and, if an e-mail address is known, by e-mail, all persons for whom Defendants prepared federal tax returns or claims for a refund for tax years 2009 through 2012 to inform them of the permanent injunction entered against them, including sending a copy of the order of permanent injunction but not enclosing any other documents or enclosures unless agreed to by counsel for the United States or approved by the Court;

G.      That the Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter an order requiring Defendants to produce to counsel for the United States, within fifteen days of the Court's order, a list that identifies by name, social security number, address, e-mail address, and telephone number and tax period(s) all persons for whom the Defendants prepared federal tax returns or claims for a refund for tax years beginning in 2009 and continuing through this litigation;

H.      That the Court, pursuant to I.R.C. §§ 7402(a), 7407, and 7408, enter an order requiring Defendants to provide a copy of the Court's order to all of their principals, officers, managers, employees, and independent contractors (if applicable) within fifteen days of the Court's order, and provide to counsel for the United States within 30 days a signed and dated acknowledgment of receipt of the Court's order for each person whom Defendants provided a copy of the Court's order;

I.      That the Court retain jurisdiction over Defendants and over this action to enforce any injunction entered against them;

J.  That the United States be entitled to conduct discovery to monitor Defendants compliance with the terms of any injunction entered against them; and

K.  Such other and further relief, including costs, as is just and reasonable.

Dated: October 1, 2013

    Respectfully submitted,

    KATHRYN KENEALLY
    Assistant Attorney General

    /s/ Mark C. Milton
    MARK C. MILTON
    Missouri Bar No. 63101
    Trial Attorney, Tax Division
    U.S. Department of Justice
    P.O. Box 7238, Ben Franklin Station
    Washington, D.C.  20044
    Telephone: (202) 616-2904
    Fax: (202) 514-6770
    Email: mark.c.milton@usdoj.gov
    *Attorneys for the United States of America*

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing **FIRST AMENDED COMPLAINT FOR PERMANENT INJUNCTION AND OTHER RELIEF** was filed electronically on the Court's CM/ECF system on October 1, 2013, which provided electronic service upon the following:

> Herman L. Jimerson, #10509
> Jimerson Law Firm
> E-mail: herman@jimersonlawfirm.com
> *Attorney for Joseph Burns*
>
> Burton H. Shostak, MB# 17443, ED# 4359
> SHOSTAK LAW, LLC
> E-mail: bshostak@shostaklawfirm.com
> *Attorney for Joseph Thomas and International Tax Services, Inc.*

/s/ Mark C. Milton
MARK C. MILTON