## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| United States of America,            ) | |
|                                      ) | |
|     Plaintiff,   ) | |
|                                      ) | |
| v.                                   ) | Case No. 4:13-cv-00884-JAR |
|                                      ) | |
| Joseph L. Burns, et al.,             ) | |
|                                      ) | |
|     Defendants.  ) | |

### AFFIDAVIT OF REVENUE AGENT JEAN LANE

*Education and Job Responsibilities*

1. I have been a Revenue Agent with the Internal Revenue Service since January 1991.

2. I received a bachelor's degree in Business Administration with an emphasis in Accounting from the University of Missouri-St. Louis in December 1989.

3. I have been assigned to the Abusive and Tax Avoidance Transactions Group since 2003.

4. My job duties include investigating the practices of federal tax return preparers suspected of preparing false or fraudulent federal tax returns.

5. In May 2011, I was assigned to investigate the federal tax return preparation practices of Joseph Burns and Joseph Thomas.

*Investigation Summary*

6. In August 2008, the IRS began a number of audits on tax returns prepared by Joseph Burns and his firm, Electronic Tax Service ("ETS"), as part of a Program Action Case ("PAC"). The PAC was initiated after Tax Compliance Officers ("TCOs"), during routine audits, discovered that some returns prepared at ETS for tax years 2006 and 2007 contained fraudulent or fictitious Schedule C income and expenses. The TCOs also found that some Schedules A ("Itemized Deductions") on returns prepared at ETS contained



Government Exhibit A

fabricated deductions. Customers reported to TCOs that some of the returns at issue were prepared by Joseph Thomas.

7. Audits (performed as part of the PAC) of 46 returns prepared by Burns and Thomas for the 2006-2008 tax years showed an average deficiency per return in excess of $5,000.

8. In 2010, the IRS assessed penalties under I.R.C. 6694(a) against Joseph Thomas, doing business as Electronic Tax Service, for preparing tax returns with bogus Schedule C business expenses and unreimbursed employee business expenses.

9. In June 2011, I requested that additional audits be performed on returns prepared by Burns and Thomas for more recent tax years, including 2009 and 2010.

10. During my investigation, I reviewed the results of audits performed by other IRS employees on returns prepared, signed, and/or filed by Burns and Thomas. I interviewed 24 taxpayers whose returns were prepared by Burns and 40 taxpayers whose returns were prepared by Thomas. I also interviewed Burns and Thomas individually.

11. Burns and Thomas currently operate separate tax return preparation businesses from a small office building located at 4144 Lindell Boulevard in St. Louis, Missouri.

12. Burns's office (Electronic Tax Service) is located upstairs in Suite 126. Thomas's office (International Tax Service, Inc.) is located downstairs in Suite B20. For approximately 15 years, Thomas and Burns shared the upstairs office.

13. Burns has been working as a tax preparer for over 20 years. Burns also worked full-time for the Metropolitan Sewer District for 42 years before retiring in February 2011.

14. Burns started Electronic Tax Service as a sole proprietorship in 1995. Burns registered Electronic Tax Service as a fictitious business name with the state of Missouri on April 25, 2007. The fictitious name registration expired on April 25, 2012.

15. Burns and Thomas charge customers tax return preparation fees ranging from $100 to $175. When Thomas worked at ETS, Burns typically charged customers $150 per return and paid Thomas $100 for every return Thomas prepared. Burns paid rent and utility bills for the shared space.

16. In November 2011, Thomas left ETS and opened International Tax Service, Inc. ("ITS"), a Missouri corporation. Thomas is the sole owner of ITS.

17. Burns still operates under the name Electronic Tax Service.

18. Burns told me he prepares 300 to 350 returns per year.

19. In 2011, Burns prepared 210 tax returns under his social security number.

20. Burns is assigned the EFIN (electronic filing identification number) of **2601. Both Burns and Thomas electronically filed tax returns using this EFIN in 2008, 2009, 2010, and 2011. The numbers of returns electronically transmitted and accepted by the IRS during these years under this EFIN are as follows:

| Processing Year | Transmitted | Accepted |
| --- | --- | --- |
| 2011 | 1294 | 939 |
| 2010 | 1676 | 1291 |
| 2009 | 1412 | 1195 |
| 2008 | 1777 | 1448 |
| Total | 6,159 | 4,873 |

21. Burns is assigned the PTIN (preparer tax identification number) of P*****211. Both Burns and Thomas used this PTIN in 2008, 2009, and 2010. The number of returns filed with this PTIN for these years is as follows:

| Processing Year | Number of Returns |
|---|---|
| 2010 | 1338 |
| 2009 | 1304 |
| 2008 | 1693 |
| Total | 4,335 |

22. In 2011, Thomas prepared 909 tax returns using a PTIN of P*****875. This PTIN belongs to a woman in Lexington, Kentucky, who no longer prepares tax returns. Thomas's correct PTIN is P*****827. Thomas told me that Burns must have put the incorrect PTIN into the tax preparation during the 2011 filing season since Burns was the one who put the information into the tax preparation software each year.

23. In 2012, Thomas prepared 1,159 tax returns using the EIN of **-***0340, which belongs to International Tax Service, Inc.

24. Since at least 2007, Burns and Thomas have prepared returns that contain false, improper, and/or inflated deductions and/or credits for charitable contributions, medical and dental expenses, vehicle mileage, meals and entertainment expenses, tax-preparation fees, child care expenses, and education expenses. Burns and Thomas also deduct non-deductible personal items on customers' returns for "grooming," "professional attire," "cleaning and maintenance," "gasoline," and "cell phone."

25. I interviewed Casey and Brooke Scruton on August 9, 2012. Thomas prepared Casey and Brooke Scrutons' 2010 joint federal tax return. A true and correct copy of the return as electronically filed with the IRS is attached as Government Exhibit 14.

26. The Scrutons did not tell Thomas that they incurred $8,189 in out-of-pocket medical and dental expenses as Thomas falsely reported on their return.[1]

27. Thomas also fabricated the $3,976 in charitable contributions reported on their 2010 return.[2] The Scrutons did not make cash charitable contributions in 2010, nor did they provide such information to Thomas.

28. Thomas also falsely reported $3,400 in child care expenses on the Scrutons' 2010 return, resulting in a child care credit of $600.[3] The Scrutons did not provide Thomas with any information regarding child care expenses. While the Scrutons sent their daughter to a daycare in Wentzville that cost them about $100 per month during 2010, their daughter did not attend the "Mother's Day Out" on "Brown Road" as Thomas falsely reported on their 2010 return.[4]

29. According to the Scrutons, Thomas also fabricated more than $12,000 in miscellaneous unreimbursed employee business and other expenses including $525 for "uniforms/shoes," $445 for "cleaning/maintenance," $1,416 for "cell phone," $4,729 for "gasoline,"[5] $2,991 for vehicle expenses and $3,177 for meals and entertainment expenses.[6]

30. This bogus information resulted in a refund of $4,973 for 2010.

---

[1] Govt. Ex. 14, pg. 14, Schedule A (Itemized Deductions), line 1.
[2] Govt. Ex. 14, pg. 14, Schedule A (Itemized Deductions), line 16.
[3] Govt. Ex. 14, pg. 9, Form 2441 (Child and Dependent Care Expenses).
[4] Govt. Ex. 14, pg., 9, Form 2441 (Child and Dependent Care Expenses).
[5] Govt. Ex. 14, pg. 15, Schedule A (Itemized Deductions), line 23; pg. 13, Other Expenses.
[6] Govt. Ex. 14, pgs. 6-7, Form 2106 (Employee Business Expenses).

31. Burns prepared the Scrutons' 2011 joint federal tax return. A true and correct copy of the return as electronically filed with the IRS is attached as Government Exhibit 15.

32. The Scrutons did not tell Burns that they incurred $13,356 in out-of-pocket medical and dental expenses for 2011 as Burns falsely reported on their 2011 return.

33. Burns also fabricated the $4,173 in charitable contributions reported on their 2011 return.[7] The Scrutons did not make cash charitable contributions in 2011, nor did they provide such information to Burns.

34. On the Scrutons' 2011 return, Burns fabricated over $11,000 in unreimbursed employee business and other expenses, including $550 for "grooming," $1,200 for "uniforms/shoes," $700 for "cleaning/maintenance," $5,729 for "cell phone."[8] In addition, Burns falsified $5,355 in vehicle expenses and $3,298 for meals and entertainment expenses.[9]

35. This bogus information resulted in a $4,790 refund for 2011.

36. I interviewed Paulette McCoy on September 13, 2012. Thomas prepared McCoy's 2011 tax return. A true and correct copy of the return as electronically filed with the IRS is attached as Government Exhibit 34. According to McCoy, she and Thomas did not discuss medical expenses at all, yet Thomas falsely reported $4,991 in medical and dental expenses on her Schedule A.[10]

37. According to McCoy, Thomas fabricated the $3,550 of daycare expenses and the name of the day care provider listed on the child care tax credit form.[11] McCoy and Thomas did

---

[7] Govt. Ex. 15, pg. 15, Schedule A (Itemized Deductions), line 16.
[8] Govt. Ex. 15, pg. 13, Other Expenses Statement.
[9] Govt. Ex. 15, pgs. 8-9, Form 2106 (Employee Business Expenses).
[10] Govt. Ex. 34, pg. 18, Schedule A (Itemized Deductions), line 1.
[11] Govt. Ex. 34, pg. 8, Form 2441 (Child and Dependent Care Expense).

6

not discuss daycare expenses, nor did she tell Thomas that her child went to daycare in 2011. In fact, her child did not go to daycare in 2011.

38. Thomas also falsified $2,165 in cash charitable contributions and $500 in non-cash charitable contributions on McCoy's 2011 return.[12] According to McCoy, she and Thomas did not discuss charitable contributions at all.

39. Thomas also fabricated unreimbursed employee business and other expenses of $299 for "work clothes shoes," $364 for "cleaning maintenance," $2,235 for "gasoline," $924 for "cell phone" and $960 for "grooming."[13] In 2011, McCoy was an employee at River City Casino. The only questions Thomas asked McCoy with respect to any job expenses was how far she drove to work and whether she wore a uniform. McCoy did not wear a uniform to work in 2011, and she did not provide Thomas with amounts for clothes, cleaning and maintenance, gasoline, or grooming. McCoy only told Thomas that she drove 15 miles each way to and from work.

40. The bogus information on McCoy's 2011 tax return resulted in a $4,646 refund.

41. Taxpayers who qualify for the head of household filing status receive an increased standard deduction. In addition, head of household status may also trigger eligibility for and/or lead to higher earned income tax credits ("EITC"). Married taxpayers cannot qualify for head of household status.

42. During my investigation, I found numerous examples of Burns and Thomas asserting the head of household status for married taxpayers or taxpayers who were otherwise ineligible for head of household status.

---

[12] Govt. Ex. 34, pg. 18, Schedule A (Itemized Deductions), line 16.
[13] Govt. Ex. 34, pg. 22, Unreimbursed Expense Statement.

7

43. In a sample of 28 returns that were prepared by Burns for tax years 2010 and 2011, 19 were filed using the head of household status. Of those 19 returns, Burns falsely asserted the head of household status on 7 of those returns (36.8%).

44. In a sample of 59 returns that were prepared by Thomas for tax years 2010 and 2011, 26 were filed using the head of household status. Of those 26 returns, Thomas falsely asserted the head of household status on 9 returns (34.6%).

45. Thomas himself was married throughout 2009, 2010, and 2011, yet when he prepared and filed his returns for those years, he improperly claimed head of household filing status. Thomas prepared and filed separate returns for his wife for those years, also improperly claiming the head of household status.

46. Burns and Thomas falsify other information on customers' returns to improperly garner eligibility for and/or to maximize the earned income tax credit (EITC), a refundable tax credit available to certain low-income taxpayers.

47. The amount of the EITC is based on income, filing status, and claimed number of dependents. Because the EITC is a refundable credit, claiming the EITC can reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a refund. Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming more dependents. Moreover, individuals with higher annual incomes, up to a certain level, are entitled to a larger credit.

48. In my experience, some tax return preparers exploit the EITC by allowing customers to claim unqualified dependents, by improperly using the head of household filing status, and/or by minting bogus income from phony businesses.

49. I interviewed Shareka Cotton on August 21, 2012. Burns prepared Cotton's 2011 return. A true and correct copy of the return as electronically filed with the IRS is attached as Government Exhibit 10.

50. According to Cotton, she told Burns that she made roughly $1,500 doing hair in 2011. Burns then prepared her 2011 return falsely reporting $12,500 in gross receipts (without any expenses) from a "hair stylus" [*sic*] business on a Schedule C.[14]

51. This bogus information resulted in a $4,114 refund.

52. I interviewed Williemae Nance on September 18, 2012. Thomas prepared Nance's 2010 and 2011 tax returns. True and correct copies of the returns as electronically filed with the IRS are attached as Government Exhibits 35 and 36, respectively.

53. Thomas falsified $12,274 in gross receipts (with no expenses) from a fictitious "janitorial service" business on Nance's 2010 tax return.[15] Nance did not receive income from a janitorial services business during 2010, nor did she tell Thomas she did.

54. Similarly on Nance's 2011 return, Thomas fabricated $19,786 in gross receipts and $4,252 in expenses from a "janitorial service" business.[16] According to Nance, in 2011 she did some house cleaning for her son's girlfriend's mother who had a cleaning business, but only made between $1,200 and $1,300.

---

[14] Govt. Ex. 10, pg. 12, Schedule C (Profit or Loss from Business).
[15] Govt. Ex. 35, pg. 9, Schedule C (Profit or Loss from Business).
[16] Govt. Ex. 36, pg. 12, Schedule C-EZ (Net Profit from Business).

TOTAL P.01

55. This bogus income reported by Thomas resulted in refunds of $5,140 and $5,559 for 2010 and 2011, respectively.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of November, 2013.

*Jean Lane*

JEAN LANE
Revenue Agent
Internal Revenue Service

NOV-05-2013 16:35   IRS   314 513 3315   P.01/01